# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **DRAKE A. THOMAS,** | ] |
| **Plaintiff,** | ] |
| **v.** | ] **Case No. 2:25-cv-2175-ACA** |
| **CITY OF PELHAM, AL, et al.,** | ] |
| **Defendants.** | ] |

## MEMORANDUM OPINION

Defendants Thomas Harold and Michael McGee are police officers with the City of Pelham, Alabama. These two officers confronted Plaintiff Drake A. Thomas after receiving reports that he was asleep in his car at a red light, found him asleep in a running vehicle, and arrested him. At Mr. Thomas's initial appearance, Defendant Pelham Municipal Court Judge Lee Barnes found Mr. Thomas in contempt of court and ordered him to be jailed for five days. Defendant Jordan Warren of the Pelham Police Department took Mr. Thomas into custody.

On a later occasion, Defendant Christian Handley, a police officer with the City of Hoover, Alabama, conducted a license plate scan of a vehicle Mr. Thomas was driving. Because the car's owner had two warrants, Officer Handley stopped the vehicle. Mr. Thomas refused to provide his identification to Officer Handley and exited the vehicle unprompted. Officer Handley pointed his firearm at Mr. Thomas

and ordered him to face away from him. After backup arrived, Officer Handley arrested Mr. Thomas.

According to Mr. Thomas, Hoover refuses to respond to his discovery requests and Pelham continued his municipal court hearings. He filed a *pro se* complaint against Shelby County; the Cities of Pelham and Hoover; Pelham Municipal Judge Barnes; Pelham Police Officers Harold, McGee, and Warren; Hoover Police Officer Christian Handley; and a host of fictitious defendants. He asserts the following causes of action:

| | |
|---|---|
| Count One: | Fourth Amendment unlawful search and seizure against Officers Harold and McGee |
| Count Two: | Fourth and Fourteenth Amendment excessive force against unnamed Pelham Police Officers |
| Count Three: | Fourteenth Amendment unconstitutional conditions of confinement against unnamed Pelham Police Officers |
| Count Four: | Sixth and Fourteenth Amendment denial of right to counsel against unnamed Pelham Police Officers |
| Count Five: | First Amendment retaliation against Judge Barnes |
| Count Six: | Fourteenth Amendment due process violation for unlawful detention against Officer Warren and "Doe Defendants" |
| Count Seven: | Fourteenth Amendment due process violation for lack of notice of a court hearing against Judge Barnes and "Pelham Court Clerk/Magistrate" |
| Count Eight: | Denial of access to the courts against "Pelham Court Clerk/Magistrate" |
| Count Nine: | Fourth Amendment malicious prosecution against Officers Harold and McGee and "Doe Defendants" |

Count Ten:           Fourteenth Amendment due process violation for retaining property against "Pelham Court Clerk/Magistrate" and "Unknown Custodian of Court Funds"

Count Eleven:        Fourth Amendment unlawful search and seizure against Officer Handley and "Doe Defendants"

Count Twelve:        Fourth Amendment excessive force against Officer Handley

Count Thirteen:      Denial of discovery against the City of Hoover

Count Fourteen:      Municipal liability against the City of Pelham

Count Fifteen:       Municipal liability against the City of Hoover

Count Sixteen:       Municipal liability against Shelby County

Count Seventeen:     Conspiracy to violate civil rights against Judge Barnes, "Pelham Clerk," and Officers Harold, Handley, McGee, and Warren

(Doc. 22 ¶¶ 87–103).[1]

Shelby County moves to dismiss the counts against it for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2) and insufficient service of process under Rule 12(b)(5). (Doc. 30). Because Mr. Thomas has not properly served the County, the court **WILL GRANT** the motion.

---

[1] Mr. Thomas's caption asserts that he sues all individual defendants in the official and individual capacity, but his cause of action section only sporadically notes which capacity the official is being sued. (*See* doc. 22 at 1, 15–19). This inconsistency makes it impossible to discern when Mr. Thomas asserts an individual or official capacity claim. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015) (noting that a shotgun complaint fails to separate a different count each claim for relief). But "when an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quotation marks omitted). Thus, the court treats any official capacity claim asserted against the individual defendant as subsumed within the *Monell* claims against the Cities and will address all causes of action asserted against the officials as separate individual capacity claims.

The remaining defendants move to dismiss under Rule 12(b)(6) based on Mr. Thomas's failure to allege a constitutional violation, qualified immunity, and abstention doctrines. (Docs. 27, 32). Because Mr. Thomas fails to state a claim, the court **WILL GRANT** those motions.

Finally, the City of Hoover and Officer Handley move to strike Mr. Thomas's video evidence. (Doc. 49). Because the court can consider this evidence at the motion to dismiss stage under the incorporation by reference doctrine, the court **WILL DENY** the motion.

## I.    BACKGROUND

At this stage, the court must accept as true the factual allegations in the amended complaint and construe them in the light most favorable to the plaintiff. *Barat v. Navy Fed. Credit Union*, 127 F.4th 833, 835 (11th Cir. 2025). However, where there is video evidence that is "clear and obviously contradicts the plaintiff's alleged facts," the court accepts the video's depiction and views the facts in the light depicted by the video. *Swinford v. Santos*, 121 F.4th 179, 190 (11th Cir. 2024) (quotation marks omitted). All parties, except for Shelby County, submitted video evidence of the events described below, and objected to consideration of the other parties' videos. (Docs. 12, 20, 37, 49; *see* doc. 36 ¶ 3). The court must first determine whether the videos can be considered at the motion to dismiss stage before recounting the facts of the case. As explained below, the court may consider all

videos submitted by the parties under the incorporation by reference doctrine. Thus, the court's description of the relevant facts will include reference to video evidence where appropriate.

### 1.    Video Evidence

The City of Pelham and its officials filed body camera videos from the traffic stop and jail intake. (*See* doc. 20). The City of Hoover and Officer Handley filed body camera videos from the traffic stop. (*See* doc. 12). Mr. Thomas submitted cell phone videos taken by his sister during the Hoover traffic stop. (*See* doc. 37). Mr. Thomas argues that the court should not consider the Hoover body camera footage because it has been altered. (Doc. 36 ¶ 3). The City of Hoover and Officer Handley move to strike Mr. Thomas's videos because they do not fall under the incorporation by reference doctrine and were not properly served under Federal Rule of Civil Procedure 5(a)(1)(D). (Doc. 49).

Generally, a court must only consider the pleadings and any exhibits attached to the pleadings at the motion to dismiss stage. *Swinford*, 121 F.4th at 186–87. However, under the incorporation-by-reference doctrine, the court can consider evidence attached to a motion to dismiss if it is "(1) central to the plaintiff's claim; and (2) undisputed, meaning that its authenticity is not challenged." *Id.* at 187 (quotation marks omitted) (holding that a district court could consider officer body camera footage capturing the confrontation underlying an excessive force claim).

5

The City of Pelham and its officials' videos are central to Mr. Thomas's claims against those defendants because they document the stop, arrest, and intake process which form the basis of Mr. Thomas's claims. *See id.*; (*see* doc. 22 ¶¶ 14–25). Mr. Thomas does not dispute the videos' authenticity. (*See generally* doc. 42). Accordingly, the court will consider that video evidence.

The City of Hoover and Officer Handley's videos likewise are central to Mr. Thomas's claims because they show the Hoover traffic stop. (*See* doc. 22 ¶¶ 51–61). However, Mr. Thomas argues that the videos "ha[ve] been altered/modified." (Doc. 36 ¶ 3). He notes that the video file was created on January 12, 2026, but "modified" on December 30, 2025, thus "showing clear [e]vidence of manipulation." (*Id.*). But Mr. Thomas's conclusory arguments do not contend "that what the footage depicts differs from what actually happened." (*Id.*); *Swinford*, 121 F.4th at 188 (noting that video evidence had not been "altered" when defendant only presented excerpts of the videos). Indeed, Mr. Thomas's own video evidence shows that the body camera footage is authentic: his videos show the exact same events unfolding, just from a different angle. Mr. Thomas's conclusory accusation of alteration is insufficient to raise an argument regarding the authenticity of the videos. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014) (holding that a party abandons an argument when he "makes no argument and cites

no authorities to support . . . conclusory assertions"). Thus, the court will consider those videos.

Finally, Mr. Thomas's videos of the Hoover stop are also central to his claim. (*See* doc. 22 ¶¶ 51–61). In one sentence, the City of Hoover and Officer Handley posit that "the videos have not been authenticated." (Doc. 49 at 3). Again, passing reference is insufficient to raise an argument regarding the videos' authenticity. *See Sapuppo*, 739 F.3d at 682. So the court will consider those videos.

The City of Hoover and Officer Handley argue that the incorporation by reference doctrine does not apply to a response to the motion to dismiss, and that Mr. Thomas is attempting to amend his complaint. (Doc. 49 at 2–3). The motion to strike does not explain why the incorporation by reference doctrine could not apply to a party's response to a motion to dismiss so long as the proffered evidence is central to the plaintiff's claim and its authenticity is not challenged. *See Swinford*, 121 F.4th at 187. Accordingly, the court will consider the videos.

The City of Hoover and Officer Handley also argue that the court should strike the videos because Mr. Thomas did not serve his motion and videos until after their reply brief was due. (Doc. 49 at 3). Under Federal Rule of Civil Procedure 5(a)(1)(D), a party must serve written motions on every party. Service can be done by filing the motion with the court's electronic filing system or by sending through other electronic means, but "is not effective if the filer or sender learns that it did not

reach the person to be served." Fed. R. Civ. P. 5(b)(2)(E). Mr. Thomas submitted his video to the Clerk of court for filing on the docket on March 9, 2026, the same day as his response brief. (Doc. 37). The same day, Defendants moved for an extension of time to file their reply brief, in part because they had not yet received the videos. (Doc. 39). The court granted the extension. (Doc. 40). Defendants ultimately filed their reply brief without reviewing the videos, which they had not received despite being registered for electronic noticing through the court's CM/ECF system, and moved to strike the videos. (Docs. 48, 49). Defendants could have sought another extension if they had not received the videos, but they chose not to. Indeed, Mr. Thomas sent the videos to Defendants after they provided notice that the videos had not been delivered through the court's electronic notice system. (*See* doc. 51-1). So the court will consider Mr. Thomas's videos and **WILL DENY** the motion to strike. (Doc. 49).

2.    The Pelham Traffic Stop

On April 16, 2024, several Pelham Police Department Officers, including Officers McGee and Harold, approached Mr. Thomas's car, which was parked in the middle of the road with the engine running at a traffic light. (Doc. 22 ¶¶ 14). Mr. Thomas was asleep inside the car. (*Id.*). The officers knocked on the window several times to wake Mr. Thomas. (*Id.* ¶¶ 15–16). Once awake, Mr. Thomas refused to exit the vehicle and answer the officers' questions. (Doc. 20, body camera footage

from April 16, 2024, 1:20–6:40). Mr. Thomas was taken into custody and transported to the Pelham City Jail, where he was held for twelve hours. (*Id.* at 3:57–6:34; doc. 22 at 5 ¶ 25).

Pelham Police Department charged Mr. Thomas with driving under the influence of alcohol, failing to display tags, and blocking the roadway. (Doc. 22 ¶ 25). At his initial appearance several weeks later, Judge Barnes held Mr. Thomas in contempt of court and ordered him to five days in jail. (*Id.* ¶ 28). Officer Warren took Mr. Thomas into custody and transported him to the Shelby County Jail. (*Id.* ¶ 31). Judge Barnes then entered a plea of not guilty on Mr. Thomas's behalf and scheduled trial. (*Id.* ¶¶ 36, 41).

Mr. Thomas did not receive notice of the trial and did not appear in court on the date of trial. (Doc. 22 ¶ 43). Following his failure to appear, the Pelham Municipal Court entered three warrants against him. (*Id.* ¶ 44).

### 3.    The Hoover Traffic Stop

Later that summer, Mr. Thomas was driving his sister's car in Hoover, Alabama, when he was pulled over by Officer Handley after a license plate scan of the vehicle revealed its owner had two outstanding warrants. (Doc. 22 ¶¶ 51–52). Mr. Thomas's sister was sitting in the passenger seat in the car and recorded the event. (*Id.* ¶ 52; *see* doc. 37).

9

Officer Handley requested Mr. Thomas's driver's license, which Mr. Thomas refused to provide. (Doc. 22 ¶ 54; doc. 12 at 0:22–1:15). Mr. Thomas then quickly exited his car and Officer Handley yelled at him to remain in the vehicle. (Doc. 12 at 1:20–1:24). As Officer Handley unholstered his gun, Mr. Thomas raised his hands in the air. (*Id.* at 1:22–1:25). But Mr. Thomas refused Officer Handley's instructions to turn away from him, and Mr. Thomas and Officer Handley remained in their respective positions under Officer Handley's backup arrived. (*Id.* at 1:35–2:37).

With backup on the scene, Officer Handley holstered his gun and the officers attempted to handcuff Mr. Thomas. (Doc. 12 at 2:37–3:10; doc. 37, Exh. 1, 0:03–0:35). When the two officers attempted to pull his arms behind his back, Mr. Thomas resisted by pulling his hands by his sides or to the front of his body. (Doc. 12 at 2:37–3:10; doc. 37, Exh. 1, 0:03–0:35). So, the officers pushed Mr. Thomas against the side of the car to secure the handcuffs. (Doc. 12 at 2:45–3:05; Doc. 37, Exh. 1, 0:15–0:30).

The officers arrested Mr. Thomas on the two Pelham warrants and later charged him with driving with a suspended license and driving without a license when he arrived at the Hoover Police Department. (Doc. 22 ¶ 60–61). Mr. Thomas has submitted discovery requests to Hoover Police Department, but they have not been produced. (*Id.* ¶¶ 62–63, 69, 70). Mr. Thomas's Pelham case has been continued, subjecting him to ongoing criminal exposure. (*Id.* ¶¶ 72, 75).

## II.   DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Where, as here, a plaintiff proceeds *pro se*, the court must liberally construe the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But conclusory allegations without supporting facts are not entitled to the presumption of truth. *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010).

Defendants all move to dismiss all claims asserted against them. (*See* docs. 27, 30, 32). The court will address the claims against each defendant separately, but address Count Seventeen asserted against all individual defendants last.

### 1.   Fictitious Defendants

The court ordered Mr. Thomas to show cause why the court should not strike the fictitious defendants in his complaint. (Doc. 52). Mr. Thomas did not respond to the court's order, identify the fictitious defendant, or move to amend his complaint. Accordingly, the court **WILL STRIKE** the fictitious defendants in the complaint and the claims asserted against only fictitious defendants: Counts Two, Three, Four, Eight, Nine, and Ten. (Doc. 22 ¶¶ 88–90, 94–96).

11

### 2.    Shelby County

Shelby County argues that Mr. Thomas failed to properly serve it. (Doc. 30). The court lacks personal jurisdiction over a defendant if the defendant has not been properly served. *Pardazi v. Cullman Med. Ctr.*, 896 F.2d 1313, 1317 (11th Cir. 1990). Once the defendant challenges service of process, the plaintiff bears the ultimate burden of proving sufficient service. *See Familia De Boom v. Arosa Mercantil, S.A.*, 629 F.2d 1134, 1138 (5th Cir. 1980), *abrogated on other grounds by Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982).[2]

Under Federal Rule of Civil Procedure 4(j)(2), a plaintiff may serve a county by either (1) "delivering a copy of the summons and of the complaint to its chief executive officer," or (2) "serving a copy of each in the manner prescribed by [the] state's law" for service on a county. Alabama law allows a plaintiff to serve a county "by serving the chief executive officer or the clerk, or other person designated by appointment or by statute to receive service of process." Ala. R. Civ. P. 4(c)(8).

Mr. Thomas's return of service of summons shows that he served Kellie Haller, a "circuit clerk" at the 18th Judicial Circuit Court of Alabama.[3] (Doc. 9 at 8).

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[3] The court takes judicial notice that the address listed on the notice of return of service is the address for the 18th Judicial Circuit Court of Alabama according to the Shelby County government website. *See* Fed. R. Evid. 201; *Ryzhov v. Mayorkas*, 634 F. Supp. 3d 1107, 1111–12

12

Ms. Haller is not the chief executive officer of the County. She also does not serve as a clerk for the county; Ms. Haller is a clerk for the Unified Judicial System of Alabama. *See, e.g.*, Ala. Code § 12-17-80. And neither party identifies any other statute that grants Ms. Haller the authority to receive service. Mr. Thomas does not respond to the County's arguments or provide evidence that could show Ms. Haller was authorized to accept service on behalf of the County. (*See generally* docs. 36, 42). So Mr. Thomas has failed to meet his burden to show proper service. *See Familia De Boom*, 629 F.2d at 1138.

Accordingly, the court **WILL DISMISS** Count Sixteen and Count Seventeen against the County **WITHOUT PREJUDICE**.

### 3. Officer Handley

Mr. Thomas asserts two claims against Officer Handley: Count Eleven for an unlawful stop and seizure and Count Twelve for excessive force. (Doc. 22 ¶¶ 97–98). Officer Handley argues that the claims should be dismissed because Mr. Thomas did not allege a constitutional violation and because he is entitled to qualified immunity. (Doc. 28 at 13–24, 26). Mr. Thomas did not allege that Officer Handley committed a constitutional violation, so the court will not discuss qualified immunity.

---

(S.D. Fla. 2022) (collecting cases in which a court takes judicial notice of facts on a government website).

     *a.*  *Count Eleven*

Mr. Thomas argues that Officer Handley unlawfully stopped and seized him by pulling over Mr. Thomas without probable cause or reasonable suspicion. (Doc. 36 ¶ 7). Officer Handley responds that (1) probable cause was not necessary to stop the car, and (2) he had reasonable suspicion to conduct the stop based on the license plate scan that revealed the driver of the car had outstanding warrants. (Doc. 28 at 16–17). The court agrees with both of Officer Handley's arguments.

"A traffic stop for a suspected violation of law is a 'seizure' of the occupants of the vehicle and therefore must be conducted in accordance with the Fourth Amendment." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). To justify a vehicle stop, an officer only needs reasonable suspicion—"that is, a particularized and objective basis for suspecting the particular person stopped of breaking the law." *Id.* (quotation marks omitted). The court considers the totality of circumstances to determine if reasonable suspicion exists. *Jackson v. City of Atlanta*, 97 F.4th 1343, 1256 (11th Cir. 2024).

Here, Mr. Thomas alleges that Officer Handley scanned the license plate of the car he was driving and learned that the owner of the vehicle had two outstanding warrants. (Doc. 22 ¶¶ 51–52). The court does not see, and Mr. Thomas does not explain, why it was unreasonable to suspect that the driver of the vehicle was also the owner. (*See* doc. 36 at 1–4). Accordingly, Officer Handley had reasonable

14

suspicion to stop the car. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1346–49 (11th Cir. 2002) (finding no constitutional violation when officers arrested a person they believed matched the description of a subject with an outstanding warrant).

Dismissal with prejudice is appropriate when a complaint cannot be more carefully drafted to state a claim. *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 862 (11th Cir. 2023). Because Officer Handley did not violate the constitution by seizing Mr. Thomas, the court **WILL DISMISS** Count Eleven against Officer Handley **WITH PREJUDICE**.

### b.    Count Twelve

Mr. Thomas alleges that Officer Handley used excessive force against Mr. Thomas by pointing a gun at him and aggressively handcuffing him. (Doc. 22 ¶¶ 57–58; *see* doc. 36 ¶ 6). Officer Handley argues that the force was reasonable. (Doc. 28 at 20–24). The court agrees with Officer Handley.

When analyzing Fourth Amendment excessive force claims, the court "ask[s] whether the officer's conduct was objectively reasonable in light of the facts confronting the officer." *Patel v. City of Madison*, 959 F.3d 1330, 1338–39 (11th Cir. 2020) (quotation marks omitted; alteration accepted). The court considers the following factors: (1) the severity of the crime, (2) whether the individual poses an immediate threat to the officer or others, (3) whether the individual resisted arrest or attempted to flee, (4) the justification for force, (5) the amount of force applied in

light of that justification, and (6) the extent of injury. *Id.* at 1339; *Richmond v. Badia*, 47 F.4th 1172, 1182 (11th Cir. 2022).

Officer Handley applied reasonable force. The Eleventh Circuit has explained that an officer is justified in displaying a firearm during a vehicle stop for protection and to maintain order. *See Courson v. McMillian*, 939 F.2d 1479, 1496 (11th Cir. 1991) (holding that an officer did not use unreasonable force when he pointed his shotgun at vehicle passengers and ordered them to lie on the ground while he awaited backup). Officer Handley pulled the car over because the registered owner had outstanding warrants. (Doc. 22 ¶¶ 52, 60). Mr. Thomas refused to provide his license and registration, which obscured Officer Handley's ability to determine "the severity of the crime." *Patel*, 959 F.3d at 1339. There were two adults in the car, increasing the need for Mr. Thomas to take protective measures. *See, e.g.*, *Courson*, 939 F.2d at 1495. Mr. Thomas then abruptly exited the vehicle and refused to comply with Officer Handley's commands to get back in the car and turn away from him. Officer Handley pointed his gun only long enough for backup to arrive to effectuate the handcuffing—about one minute and twenty seconds. And Mr. Thomas did not sustain an injury. Under the circumstances, Officer Handley's actions were reasonable.

Nor was the force used to handcuff Mr. Thomas unreasonable. When detaining an individual, an officer may use "some degree of physical coercion or

16

threat thereof to effect it." *Patel*, 959 F.3d at 1338 (quotation marks omitted). [T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment." *Myers v. Bowman*, 713 F.3d 1319, 1327 (11th Cir. 2013) (quotation marks omitted). The videos show Officer Handley and another officer roughly pulling Mr. Thomas's arms behind his back to handcuff him while Mr. Thomas struggles to pull his arms to the front of his body. The officers push Mr. Thomas against the car as Mr. Thomas continues to struggle. This level of force was *de minimis* and necessary to effectuate the arrest. *See id.* at 1328 (holding that an officer used *de minimis* force when the officer grabbed the suspect by the arm, forced him to the ground, and placed him in handcuffs). Thus, Mr. Thomas failed to allege a constitutional violation.

Because the videos show that no use of excessive force occurred, the court **WILL DISMISS** Count Twelve against Officer Handley **WITH PREJUDICE**.

### 4. City of Hoover

Mr. Thomas alleges two claims against the City of Hoover: Count Thirteen for denying discovery and Count Fourteen for *Monell* liability. (Doc. 22 ¶¶ 99, 101). The City of Hoover moves to dismiss because (1) Mr. Thomas has failed to state a claim under *Monell* and (2) the *Rooker-Feldman* and *Younger* doctrines bar this action. (Doc. 28 at 8–12, 25). Because the court agrees that Mr. Thomas has not

17

stated a claim against the City of Hoover, the court will not address *Rooker-Feldman* or *Younger*.

An individual can sue a municipal entity for damages under 42 U.S.C. § 1983 if he alleges that he suffered a constitutional violation stemming from the municipality's official custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). "To prove a *Monell* claim, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *Andre v. Clayton Cnty.*, 148 F.4th 1282, 1300 (11th Cir. 2025). "Normally random acts or isolated incidents are insufficient to establish a custom or policy." *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

### a.    Count Thirteen

In Count Thirteen, Mr. Thomas alleges that after he was arrested and charged, "Hoover refused to provide body camera footage and discovery when requested, later selectively submitting footage defensively." (Doc. 22 ¶¶ 64, 99). The City argues that the allegations in the complaint are conclusory and lack factual detail sufficient to state a claim against the City under *Monell*. (Doc. 28 at 8–11). The court agrees with the City.

18

Mr. Thomas alleges neither an unconstitutional custom nor policy. He alleges that he attempted to obtain body camera footage but was denied. But his complaint contains no allegations of any similar instances or City of Hoover policy. Thus, he has not pleaded factual content that could allow the court to draw a reasonable inference that an unconstitutional custom or policy exists. *See Iqbal*, 556 U.S. at 678.

Accordingly, the court **WILL DISMISS** Count Thirteen against the City **WITHOUT PREJUDICE**.

### b.    *Count Fifteen*

Mr. Thomas argues that four of the City of Hoover's alleged policies violated his constitutional rights. (Doc. 22 ¶ 101). The City again argues that Mr. Thomas conclusorily asserts that a policy exists without pleading facts to support it. (Doc. 28 at 8–11).

Mr. Thomas again failed to allege any customs or policy. Mr. Thomas lists four customs and policies with no supporting factual allegations. (Doc. 22 ¶ 101). But these are conclusory allegations that cannot state a claim. *See Iqbal*, 556 U.S. at 678. Mr. Thomas does not allege a particular policy or support the alleged custom with allegations of other instances of excessive force or unreasonable seizures. *See Andre*, 148 F.4th at 1300–01. Moreover, as explained above, Officer Handley's actions were constitutional and cannot support Mr. Thomas's *Monell* claim.

Accordingly, the court **WILL DISMISS** Count Fifteen against the City **WITHOUT PREJUDICE**.

      5.      Officers McGee and Harold

Count One asserts that Officers Harold and McGee unlawfully seized and arrested Mr. Thomas during the Pelham traffic stop. (Doc. 22 ¶ 87). Officers McGee and Harold maintain that Mr. Thomas did not allege any constitutional violation and that they are entitled to qualified immunity. (Doc. 33 at 15–33). Because the court agrees that Mr. Thomas has failed to allege a constitutional violation, the court does not discuss qualified immunity.

Mr. Thomas alleges that Officers McGee and Harold did not have reasonable suspicion to stop him and probable cause to make an arrest. (Doc. 22 ¶ 87). The court disagrees. Even before considering the video evidence, the officers had reasonable suspicion to stop and arrest Mr. Thomas because he was asleep in his car while he was stopped at a red light. (*Id.* at 4).[4] And he did not respond to officers' repeated requests for his name and to state whether he was drunk. (Doc. 20, body camera footage from April 16, 2024, 1:20–6:40). Mr. Thomas appeared dazed and non-responsive leading up to his arrest. (*Id.* at 3:57–6:34). So the officers had "a particularized and objective basis for suspecting the particular person stopped of

---

[4] Mr. Thomas's complaint inadvertently repeats paragraph numbers 14 through 22. (*See* doc. 22 at 4). To avoid confusion, the court will refer to the allegations on this page by the page number only.

breaking the law," *Heien*, 574 U.S. at 60, and a reasonable officer could conclude "that there was a substantial chance of criminal activity," *Washington v. Howard*, 25 F.4th 891, 902 (11th Cir. 2022) (quotation marks omitted).

Accordingly, the officers had reasonable suspicion to conduct a traffic stop and probable cause to arrest Mr. Thomas. The court **WILL DISMISS** Count One against Officers McGee and Harold **WITH PREJUDICE**.

### 6.    Officer Warren

Mr. Thomas asserts Count Six against Officer Warren for "unlawful detention and punitive incarceration without due process." (Doc. 22 at 16). Officer Warren responds that he is entitled to qualified immunity. (Doc. 33 at 15–19). The court agrees with Officer Warren.

Qualified immunity protects all government officials except those who are plainly incompetent or knowingly violate federal law from the duty of defending their actions and liability. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). The court uses a burden shifting analysis to determine if an officer is entitled to qualified immunity. *Donald v. Norris*, 131 F.4th 1255, 1264 (11th Cir. 2025). First, the officer bears the initial burden of showing that he was acting within his discretionary authority. *Id.* If he does so, then the plaintiff must show that the officer violated a clearly established constitutional right. *Id.*

21

An officer "acts within his discretionary authority if his actions were (1) undertaken pursuant to the performance of his duties and (2) within the scope of his authority." *Id.* To satisfy the first prong, Officer Warren does not have to establish that he committed the act for a constitutional purpose, in a constitutional manner, to a constitutional extent, or under constitutionally appropriate circumstances. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). Mr. Thomas's only allegation against Officer Warren is that "[Mr. Thomas] was summarily arrested in open court by Officer Warren." (Doc. 22 ¶ 31). Conducting arrests are within the discretionary functions of police officers. *See Grider v. City of Auburn*, 618 F.3d 1240, 1268 (11th Cir. 2010). So the burden shifts to Mr. Thomas to show that Officer Warren violated his clearly established rights.

A plaintiff can show that a right is clearly established three ways: (1) presenting materially similar case law; (2) showing that a broad principle of federal law clearly establishes the right; or (3) arguing that the conduct is so egregious that a constitutional right was violated even in the absence of case law. *Gilmore v. Ga. Dep't of Corr.*, 144 F.4th 1246, 1258 (11th Cir. 2025). Mr. Thomas does not respond to Officer Warren's argument, thus failing to point to any law that shows Officer Warren's conduct was unconstitutional, much less that the conduct was clearly established to be unconstitutional. (Doc. 42). Accordingly, Officer

22

Warren is entitled to qualified immunity. The court **WILL DISMISS** Count Six against Officer Warren **WITHOUT PREJUDICE**.

### 7.   Judge Barnes

Mr. Thomas asserts two causes of action against Judge Barnes: Count Five for First Amendment retaliation based on Judge Barnes's contempt order and Count Seven for due process violations based on issuing warrants and bond forfeitures without providing notice of a hearing. (Doc. 22 ¶¶ 91, 93). He seeks only declaratory and injunctive relief. (*Id.*). Judge Barnes argues that (1) Mr. Thomas's claims are barred by *Younger* abstention, (2) his claims are barred by the *Rooker-Feldman* doctrine, and (3) Judge Barnes is immune from suit. (Doc. 33 at 11–15). Because *Younger* abstention bars the court from granting Mr. Thomas the relief he seeks, the court will not address Judge Barnes's other arguments.

"[A]bsent extraordinary circumstances, federal courts should not enjoin state criminal prosecutions." *Hughes v. Att'y Gen. of Fla.*, 377 F.3d 1258, 1262 (11th Cir. 2004); *see Younger v. Harris*, 401 U.S. 37, 53 (1971). Under *Younger*, federal courts may not issue injunctions that unduly interfere with criminal proceedings before municipal courts as well. *See, e.g.*, *Hicks v. Miranda*, 422 U.S. 332, 349 (1975); Ala. Code § 12-14-1 (establishing municipal courts as part of the Alabama Unified Judicial System). When federal court action would unduly interfere with the ongoing criminal proceedings, *Younger* abstention applies unless "(1) there is evidence of

23

state proceedings motivated by bad faith, (2) irreparable injury would occur, or (3) there is no adequate alternative state forum where the constitutional issues can be raised." *Hughes*, 377 F.3d at 1263 n.6; *31 Foster Child. v. Bush*, 329 F.3d 1255 (11th Cir. 2003).

The contempt order, warrants, and bond forfeiture orders that Mr. Thomas seeks to enjoin are a part of his pending prosecution in the municipal court. (*See* doc. 22 at 16 ¶ 93, 22 ¶¶ 4–5). Preventing a municipal court from enforcing its orders would unduly interfere with Mr. Thomas's prosecution, so *Younger* abstention applies. *See Hicks*, 422 U.S. at 349; *Pompey v. Broward Cnty.*, 95 F.3d 1543, 1551 (11th Cir. 1996) (holding that *Younger* abstention applies when a movant seeks to enjoin part of a state's civil contempt process). And Mr. Thomas makes no argument that the Pelham Municipal Court prosecution is motivated by bad faith, will cause irreparable injury, or will not provide him a remedy for the alleged constitutional violations through an appeals process. (*See generally* doc. 42). Consequently, the court abstains under *Younger*.

As such, the court **WILL DISMISS** Counts Five and Seven against Judge Barnes **WITHOUT PREJUDICE**.

### 8.    City of Pelham

Mr. Thomas also asserts a *Monell* claim against the City of Pelham, alleging the City of Pelham has the following unconstitutional customs or policies:

(1) obstruction of court filings; (2) retention of funds without forfeiture orders; (3) retaliatory contempt practices; (4) failure to train jail staff and court personnel; (5) refusal to quash warrants and accept paperwork related to warrants; (6) creating fictitious warrants; and (7) allowing Judge Barnes to hold court proceedings despite not having a valid oath of office. (Doc. 22 ¶ 100). The City of Pelham responds that the complaint does not sufficiently allege any unconstitutional custom or policy. (Doc. 33 at 11). The court agrees.

Like his *Monell* claims against the City of Hoover, Mr. Thomas fails to allege sufficient facts establishing an unconstitutional custom or policy. (*See generally* doc. 22). He alleges no facts that would create a reasonable inference of any of the unconstitutional policies that he alleges. *See Iqbal*, 556 U.S. at 678. At best, Mr. Thomas alleges "random acts [and] isolated incidents." *See Depew*, 787 F.2d at 1499.

Accordingly, the court **WILL DISMISS** Count Fourteen against the City of Pelham **WITHOUT PREJUDICE**.

        9.     Count Seventeen

Mr. Thomas alleges that Judge Barnes and Officers Harold, McGee, Warren, and Handley participated in a conspiracy to deprive him of his constitutional rights by obstructing filings, enforcing void process, and retaliating against protected conduct. (Doc. 22 ¶ 103). The elements of a civil rights conspiracy are (1) a

conspiracy, (2) for the purpose of depriving a person of equal privileges and immunity of the law, (3) an act in furtherance of the conspiracy, and (4) a deprivation of a right. *Denney v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001). Conspiracy requires the plaintiff to allege "an agreement between two or more people." *Wainberg v. Mellichamp*, 93 F.4th 1221, 1225 (11th Cir. 2024).

Defendants argue that Mr. Thomas failed to allege that they entered into an agreement to deny Mr. Thomas of any constitutional right. (Doc. 28 at 26; doc. 33 at 24–25). The court agrees. Mr. Thomas never alleges that any agreement was reached. (*See generally* doc. 22). Nor does his complaint present facts that would create a reasonable inference that Defendants were involved with the alleged deprivation of rights. (*See generally id.*). Accordingly, the court **WILL DISMISS** Count Seventeen against Judge Barnes and Officers Harold, McGee, Warren, and Handley **WITHOUT PREJUDICE**.

### III.    CONCLUSION

The court **WILL GRANT** Shelby County's motion to dismiss and **WILL DISMISS** Count Sixteen and Seventeen against the County **WITHOUT PREJUDICE**. (Doc. 30)

The court **WILL GRANT** the City of Hoover and Officer Handley's motion to dismiss. (Doc. 27). The court **WILL DISMISS** Counts Thirteen and Fifteen against the City of Hoover **WITHOUT PREJUDICE**. The court **WILL DISMISS**

26

Count Seventeen against Officer Handley **WITHOUT PREJUDICE** and **WILL DISMISS** Count Eleven and Twelve against him **WITH PREJUDICE**.

The court **WILL GRANT** the City of Pelham, Judge Barnes, and Officers Harold, McGee, and Warren's motion to dismiss. (Doc. 32). The court **WILL DISMISS** Count Fourteen against the City of Pelham **WITHOUT PREJUDICE**. The court **WILL DISMISS** Counts Five, Seven, and Seventeen against Judge Barnes **WITHOUT PREJUDICE**. The court **WILL DISMISS** Count Six against Officer Warren **WITHOUT PREJUDICE**. The court **WILL DISMISS** Count One against Officers McGee and Harold **WITH PREJUDICE** and **WILL DISMISS** Count Seventeen against them **WITHOUT PREJUDICE**.

The court **WILL STRIKE** the fictitious defendants and Counts Two, Three, Four, Eight, Nine and Ten.

Finally, the court **WILL DENY** the motion to strike. (Doc. 49).

The court will enter a separate final order consistent with this opinion.

**DONE** and **ORDERED** this July 10, 2026.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE

27